# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## CASE NO.:

VARONDRIA T. WILLIAMS
 Plaintiff,

v.

The GEO GROUP, INC.
a Florida Corporation
d/b/a GEO Secure Services, LLC



 Defendant,

_____/

## COMPLAINT & DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, VARONDRIA WILLIAMS (hereinafter referred to as "Williams" or "Plaintiff"), Pro Se, sues the Defendant, The GEO GROUP, INC., a Florida Profit Corporation, d/b/a GEO Secure Services, LLC (hereinafter referred to as "GEO Group" or "Defendant"), and alleges the following:

## JURISDICTION AND VENUE

1.  This is a civil action for violations of the American with Disabilities Act, as amended by the ADA Amendments Act of 2008 ("ADA"), 42 U.S.C. § 12101 *et seq.*, Section 1981 of the Civil Rights Act of 1866, Florida Civil Rights Act ("FCRA"), Fla. Stat. §760.10 *et seq.*, and the Intentional Infliction of Emotional Distress.

1

2.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

3.    Venue lies within the Southern District of Florida, West Palm Beach Division, pursuant to 28 U.S.C. §§ 1391 (b) and (c), because all actions relevant to Plaintiff's claims arose in this Judicial Circuit.

## SATISFACTION OF CONDITIONS PRECEDENT

4.    All conditions precedent to the maintenance of this action have been met or waived.

5.    On June 14, 2018, Williams filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination. A supplemental charge was filed on August 23, 2018, to include additional acts of disability discrimination, racial discrimination, and retaliation. A third supplementary charge was filed on September 15, 2018, to include other acts of disability discrimination and retaliation. A copy of said charges is attached as "**Exhibit A**."

6.    The EEOC issued Williams a Notice of Right to Sue dated August 20, 2020, within 90 days of which Williams is filing suit.

## PARTIES

7.   Plaintiff, Varondria Williams, is a forty-six (46) year old individual and resident of Palm Beach County, Florida who, at all times material herein, resided in Palm Beach County, Florida.

8.   From about January 2016 to August 2018, Defendant employed Plaintiff as an Academic Instructor and a Substance Abuse Counselor.

9.   At all times material herein, Defendant employed Plaintiff as a Substance Abuse Counselor at South Bay Correctional Facility located at 600 US-27, South Bay, FL 33493.

10.  At all times material herein, Plaintiff met the definitions of "employee" and/or "eligible employee" under all applicable federal and state statutes.

11.  At all times material herein, Plaintiff is an African American female and is protected from discriminatory employment practices due to her race and color pursuant to 42 U.S.C. § 2000e-2(a)(1).

12.  At all times material herein, Plaintiff had a "disability" as defined in 42 U.S.C. § 12102, which states that the term "disability" means "a physical or mental impairment that substantially limits one or more major life activities of such individual", "a record of such impairment", or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C).

13.  At all material times herein, Plaintiff had one or more disabilities within the meaning of the ADA, its implementing regulations, and the FCRA as she had

one or more physical impairments that substantially limited one or more major life activities, had a record of such impairments, and/or regarded as having such impairments.

14. At all times material herein, Plaintiff had a disability within the meaning of the ADA, its implementing regulations, and the FCRA as she suffered from, and had a record of a serious medical condition, which was Anemia and a Hemorrhaging Fibroid Tumor.

15. The severity of Plaintiff's Anemia, largely episodic, is a disability within the meaning of the ADA and its implementing regulations, in addition to the FCRA, because it is a physical impairment that substantially limits one or more major life activities, including, but not limited to, performing manual tasks, walking, standing, bending, lifting, and working after a hemorrhage episode. 42 U.S.C. § 12102(1)-(2), 42 U.S.C. § 12102(4)(D), 29 C.F.R. § 1630.2(h)-(j).

16. Plaintiff's disability was due to a fibroid tumor that would occasionally hemorrhage and cause severe Anemia. Because of the size of the fibroid tumor, it was difficult for Plaintiff to hold her urine. As a result, Plaintiff would make frequent trips to the bathroom to avoid urinating on herself. The fibroid tumor not only affected the Plaintiff's bladder, but it also affected the

Plaintiff's heart.  While having the fibroid tumor, Plaintiff was diagnosed and suffered from the following:

- <u>Fibroid</u> – Abnormal growths that develop in or on a woman's uterus.

- <u>Iron Deficiency Anemia</u> – A condition in which blood lacks adequate healthy red blood cells. Red blood cells carry oxygen to the body's tissues.

- <u>Acute Posthemorrhagic Anemia</u> – A condition in which the body quickly loses a large volume of circulating hemoglobin.

- <u>Symptomatic Anemia</u> – Exists when hemoglobin content is less than meets the oxygen-carrying demands of the body.

- <u>Heart Palpitations</u> – A sensation that the heart is racing, pounding, fluttering, or skipping a beat.

- <u>Tachycardia</u> – A condition that makes the heart beat more the 100 times per minute.

- <u>Anxiety</u> – The body's natural response to stress.

- <u>Depression</u> – A mood disorder that causes a persistent feeling of sadness and loss of interest.

17. The symptoms mentioned above are common for someone suffering from severe Anemia, particularly for an extended period of time.

18. Plaintiff's disability was a life-threatening disability because a hemorrhage episode can trigger an acute response, causing hypoxia in the brain or death.

19. Depending on the volume of blood loss after a hemorrhage episode, Plaintiff would have to act immediately and request the assistance of paramedics to administer fluids and transport Plaintiff to the nearest hospital for intravenous iron infusions to avoid hypoxia conditions in her brain or death. Plaintiff also knew the importance of drinking lots of water until paramedics arrive. Plaintiff carried out the above scenario on numerous occasions, for the Plaintiff has made numerous emergency room trips to Memorial Regional Hospital, Palms West Hospital, and Memorial West Hospital for intravenous iron infusions.

20. Plaintiff's Anemia and fibroid tumor is a disability within the meaning of the ADA and its implementing regulations, in addition to the FCRA, because it is a physical impairment that substantially limits one or more major life activities, including, but not limited to manual tasks, walking, standing, lifting, bending, and breathing. 42 U.S.C. § 12102(1)-(2); 42 U.S.C. § 12102(4)(D); 29 C.F.R. § 1630.2(h)-(j).

21. Plaintiff had one or more disabilities and/or had a record of having one or more disabilities when Plaintiff submitted her request for a reasonable accommodation to Defendant and when Defendant refused and failed to accommodate Plaintiff's request for a reasonable accommodation.

22. Plaintiff had one or more disabilities, had a record of having one or more disabilities, and/or Defendant regarded her as having one or more disabilities within the meaning of ADA, its implementing regulations, and the FCRA, when Defendant took an adverse employment action against Plaintiff and terminated her employment on August 13, 2018. 42 U.S.C. § 12112(a).

23. Plaintiff was a "qualified individual" with a disability within the meaning of the ADA, 42 U.S.C. § 12111(8), and the FCRA in that Plaintiff, was an individual who, with or without a reasonable accommodation, could have performed the essential functions of a Substance Abuse Counselor with Defendant.

24. Plaintiff was a qualified individual with a disability and was protected from unlawful employment practices on the basis of her disability, including disability discrimination, failure to provide a reasonable accommodation, retaliation, and other unlawful actions of Defendant as alleged herein, under the ADA, its implementing regulations, in addition to the FCRA.

25. The Defendant, GEO Group, specializes in privatized corrections, detention, and mental health treatment. Headquartered in Boca Raton, Florida, it maintains facilities in North America, Australia, South Africa, and the United Kingdom. GEO Group owns some of its facilities while others are owned by federal and state governments, which hire GEO Group to operate them. GEO Group employs over 23,000 employees worldwide. In 2018, GEO Group generated gross revenues of over $2.32 billion and 2.47 billion in 2019.

26. GEO Group is a Florida For Profit Corporation organized and existing under and by virtue of the laws of Florida and registered to do business within Florida. Its corporate office is located in Boca Raton, FL, and at all times material herein, conducted substantial and continuous business within the Southern District of Florida. Therefore, GEO Group is subject to the laws of the United States and the State of Florida.

27. Defendant has, at all times material herein, employed 15 employees or more for each working day in each of the 20 or more calendar weeks in the current or preceding year in accordance with the FCRA (Fla. Stat. § 760.02(7)) and the ADA.

28. At all times material herein, Defendant was also an employer as defined in Fla. Stat. §448.101 in that Defendant is a private corporation that employs 10 or more persons.

## **STATEMENT OF FACTS**

29.  Around December 2018, Plaintiff began experiencing vaginal bleeding that was no longer controllable with a sanitary napkin or a tampon. While attending a mandated training at South Bay Correctional Facility on January 11, 2018, Plaintiff began to abruptly hemorrhage, resulting in blood traveling down her pants and onto the training room floor. After cleaning the blood off the training room floor, corrections employee (Captain Hayes), escorted the Plaintiff through a secret location of the prison to avoid embarrassment. After the incident, Plaintiff felt weak and visited an urgent care center.

30.  On January 12, 2018, the urgent care center called and instructed the Plaintiff to go to the emergency room. The Plaintiff was later admitted to Wellington Regional Hospital, where she was diagnosed with a critically low hemoglobin level (Anemia) and a Fibroid Tumor. The doctors at Wellington Regional instructed Plaintiff to have an emergency blood transfusion, but Plaintiff declined due to personal and religious beliefs. Instead of a blood transfusion, Wellington Regional administered intravenous iron infusions to prevent hypoxia conditions in the brain or death. Plaintiff called out sick on January 12, 2018 and notified Assistant Warden Charles Lawrence that she was in the hospital.

31. On January 16, 2018, Plaintiff sent an email to Assistant Warden Charles
Lawrence advising him of her medical condition. Assistant Warden Charles
Lawrence then forwarded the email to Claude Maye (Warden), Lakeshia
Ruffin (Human Resources Manager), Tosheria Ford (Payroll Clerk), and
Olufemi Ojo (Assistant Warden of Finance). After sending the email, the
Plaintiff's work dynamics changed for the worst.

32. Once released from the hospital, a return to work form and accommodation
request was completed by Medical Doctor Julie Pass and emailed to Human
Resources Manager, Lakeshia Ruffin, on January 23, 2018. Dr. Pass stated
the following on the form, "Varondria needs to be working in an area with
immediate access to a bathroom." GEO Group ignored the accommodation
request, and no accommodation was granted. 42 U.S.C. § 12112 5(a)-(b), 29
C.F.R. § 1630.9(a), 29 C.F.R. § 1630.9(e).

33. When the Plaintiff was hospitalized and out sick, GEO Group refused to pay
the Plaintiff her accrued Paid Time Off (PTO), but other employees were
allowed to use their PTO for vacation and illnesses. Fla. Stat. §760.10(1)-(2),
42 U.S.C. § 12112 (a)-(b), 29 C.F.R. § 1630.4(a).

34. When Plaintiff contacted the Human Resources Department about her PTO,
Ms. Ruffin responded via email on January 31, 2018 and stated because
Plaintiff disrupted the departmental flow, the department head can deny the

10

use of PTO.  Assistant Warden Charles Lawrence, Plaintiff's department

head, telephoned the Plaintiff and confirmed that the Plaintiff could not use

her accrued PTO, and therefore would not be paid.

35. Because Plaintiff disrupted the department flow by getting sick and requiring

hospitalization, GEO Group denied the Plaintiff from using her PTO.

36. Since GEO Group refused to pay the Plaintiff her accrued PTO and fail to

accommodate her disability, Dr. Joseph Poitier completed an FMLA packet

on Plaintiff's behalf, so she could receive payment for the time she was in the

hospital and allow her time to have surgery with the hopes of not having to

request an accommodation. Plaintiff went out on FMLA from January 13,

2018 to April 13, 2018.

37. In January of 2018, Plaintiff contacted GEO Group's Corporate Office

numerous times and left messages within the Human Resources Department

to call her about her pay in addition to the discriminatory behavior by South

Bay's Management. Because the Human Resources Department failed to call

the Plaintiff back, she began to suspect that the corporate office is supporting

or directing management's discriminatory behavior.

38. Plaintiff's suspicions were later confirmed when Mutual of Omaha (GEO

Group's long-term and short-term disability insurance provider) contacted

GEO Group's Corporate Office in support of Plaintiff receiving an

accommodation. Mutual of Omaha later telephoned and advised the Plaintiff that they had contacted GEO Group's Corporate Office and GEO Group's Corporate Office refuse to provide any type of accommodation. Mutual of Omaha documented the failure to accommodate in their report and provided Plaintiff a copy. 42 U.S.C. § 12203(b).

39.   Regrettably, the Plaintiff could not have surgery prior to her FMLA expiring due to the severity of her medical condition. Plaintiff had a very large fibroid tumor that prevented the Plaintiff from maintaining adequate hemoglobin levels. Plaintiff's operation would require a specialized surgeon. The physicians at Wellington Regional Hospital declined to perform surgery on the Plaintiff due to her low hemoglobin levels.

40.   Dr. Joseph Poitier, a medical doctor and graduate from the University of Miami School of Medicine who had also worked for Jackson Memorial Hospital for many years as a physician, instructed the Plaintiff to go to the University of Miami/Jackson Memorial Hospital because they specialize in bloodless surgeries.

41.    Unfortunately, the University of Miami/Jackson Memorial Hospital services were in great demand, and Plaintiff would have to wait months to get an appointment.

42. As a Substance Abuse Counselor, one of Plaintiff's job duties includes group counseling in a TV room within a locked quad consisting of more than 70 male inmates. The quad is an open-bay quad with multiple beds, urinals, and toilets. There are no private bathrooms in the quad.

43. To exit the locked quad, Plaintiff must first leave the TV room, walk towards the door, press a button, and wait for security personnel to open the door (which can take up to 15 minutes) while more than 70 male inmates have a clear view of Plaintiff's backside.

44. When working in the quad, Plaintiff is locked in the quad by herself with no other personnel. Plaintiff does not have access to a radio, so she cannot immediately communicate with security staff should an emergency arise. Plaintiff is provided a panic alarm that occasionally does not work.

45. A working panic alarm does not guarantee that security staff will open the door. For example, a Caucasian female abruptly resigned from her position as a Substance Abuse Counselor at GEO Group because she had pressed her panic alarm button numerous times due to a male inmate masturbating in front of her. Although she repeatedly pressed the panic alarm button, security staff delayed opening the door and watched her break down into tears within the quad.

46. Prison security staff will sometimes delay opening the door for legitimate security reasons, not paying attention, or out of spite. While working in the quad, Plaintiff's access to a bathroom and emergency services is entirely dependent on the security personnel monitoring that quad via a closed-circuit television (CCTV) system.

47. Because Plaintiff had a life-threatening disability, Plaintiff was bothered by some of the actions of security personnel at the prison. Another example is the suicide of a male inmate, Nicholas Beyo, that revealed security personnel were falsifying reports and failing to conduct security and safety inspections, as documented in a report by The Florida Department of Corrections Office of The Inspector General.

48. Non-security staff (Teachers, Counselors, Case Managers, etc.) have repeatedly told management, individually and at staff meetings, that security staff takes too long to open doors when moving about the prison.

49. Prior to returning to work, Plaintiff submitted a second accommodation request on April 15, 2018, via GEO Group's Attending Physician Statement. Dr. Poitier released the Plaintiff back to work full duty but specifically documented on the form, "Cannot be locked in a quad. Needs immediate access to a bathroom." GEO Group denied the second accommodation request because Dr. Poitier checked the "Full Duty" box. 42 U.S.C. § 12112 5(a)-(b),

29 C.F.R. § §1630.9(a) and (e). Plaintiff was also instructed that her doctor needed to complete GEO Group's Accommodation Request Form.

50.  GEO Group then provides the Plaintiff with their Accommodation Request Form. The Accommodation Request Form that's provided to the Plaintiff listed "Job Description – Substance Abuse Counselor" and "Essential Functions" at the top of the first page. The form appears altered with white spaces and the first page starting at number three. Based on the form's presentation, it's not a standard form but one that was designed specifically for the Plaintiff. The Accommodation Request Form provided to the Plaintiff has occasional and rare job duties listed as essential functions. 42 U.S.C. § 12203 (b).

51.  For many years, GEO Group has employed thousands of Substance Abuse Counselors nationwide. In fact, GEO Group is presently hiring for Substance Abuse Counselors in the following states: Arizona, Georgia, California, Idaho, Pennsylvania, Oklahoma, Florida, Texas, New Mexico, and Illinois. GEO Group has standard (pre-constructed) human resources forms that facility human resource managers are required to use, but the Plaintiff was given an Accommodation Request Form that was designed specifically for her.

52. On April 23, 2018, a third accommodation request was completed via GEO Group's Accommodation Request Form and hand-delivered to the Human Resources Department. Although GEO Group's Accommodation Request Form had occasional and rare job duties listed as essential job duties, Dr. Poitier completed the form accordingly and continued to write the following: "Cannot be locked in a quad and needs immediate access to a bathroom." The third accommodation request was denied because GEO Group stated that they had mistakenly given Plaintiff the wrong form. 42 U.S.C. § 12112 (a)-(b), 29 C.F.R. § 1630.9(a).

53. GEO Group then provides the Plaintiff with a different Accommodation Request Form listing "Job Description – Substance Abuse Counselor" and "Essential Functions" at the top of the page, but unlike the first form, the essential functions have changed. Like the previous form, it appears altered and not a standard form. The second form also lists occasional and rare job duties as essential job duties. The second Accommodation Request Form provided to Plaintiff confirmed that the forms were specifically created for the Plaintiff and not a form that's routinely distributed to individuals requesting a reasonable accommodation. 42 U.S.C. § 12203 (b).

54. GEO Group provided the Plaintiff, with what's supposed to be a standard accommodation request form for Substance Abuse Counselors, with two

different essential job functions. It's also not clear as to how some of the job duties of a Corrections Officer appeared in the first accommodation request form that's labeled for Substance Abuse Counselors.

55. On April 30, 2018, a fourth accommodation request was submitted via a corrected Attending Physician Statement without the full duty box checked. Dr. Poitier requested the same two accommodations "Cannot be locked in a quad. Needs immediate access to a bathroom." The fourth accommodation request was denied. 42 U.S.C. § 12112 5(a)-(b), 29 C.F.R. § 1630.9(a).

56. A fifth accommodation request was completed and submitted to GEO Group on April 30, 2018. Dr. Poitier again stated on GEO Group's Accommodation Request Form that Plaintiff cannot be locked in a quad and must have immediate access to a bathroom. The fifth request was also denied. GEO Group's reason for the denial was that the quad cannot be unlocked for security reasons. 42 U.S.C. § 12112 5(a)-(b), 29 C.F.R. § 1630.9(a).

57. The first accommodation request stated, "Varondria needs to be working in an area with immediate access to a bathroom." The second request stated, "Cannot be locked in a quad. Needs immediate access to a bathroom." The third request stated, "Cannot be locked in a quad. Needs immediate access to a bathroom." The fourth request stated, "Cannot be locked in a quad" and "Needs access to bathroom immediately." The fifth request stated, "Needs

immediate access to bathroom. Cannot be locked in quad." Neither of the above requests asked GEO Group to unlock the quad. However, GEO Group denied the reasonable accommodation request stating, "Unlocked Quads are a security issue and therefore, need to stay locked at all times." 42 U.S.C. § 12112 5(a)-(b), 29 C.F.R. § 1630.9(a).

58. GEO Group paraphrased the accommodation request in an attempt to justify the denial and prevent legal ramifications. 42 U.S.C. § 12203 (b), 42 U.S.C. § 12112 (a)-(b).

59. On May 10, 2018, GEO Group emailed the Plaintiff a list of accommodations that were approved and denied. Without any verbal input from the Plaintiff, GEO Group took it upon themselves to approve the following accommodations:

1. Occasional overtime of additional 8 hours

2. Standing as much as 100% of the time

3. Walking as much as 100% of the time

4. Occasional lifting and carrying up to approximately 61 lbs. 30% of the time

5. Pushing or pulling up to 61 lbs. as much as 30% of the time

6. Reaching above shoulder level 60% of the time

7. Needing to be close to a bathroom at all times

60. Approved accommodation #1, Substance Abuse Counselors were prohibited from working overtime unless an emergency arises. Without any verbal communication from the Plaintiff, GEO Group acted with malice by providing an accommodation for overtime, knowing the Plaintiff was prohibited from working overtime. While employed with GEO Group, the Plaintiff never worked overtime. The accommodation offered by GEO Group offered no assistance in allowing the Plaintiff to do the essential functions of her job. In addition, it was an accommodation the Plaintiff never requested.

61. Approved accommodations #2 - #6 were not a part of the Plaintiff's job duties. Without any verbal communication from the Plaintiff, GEO Group acted with malice by providing accommodations #2 - #6, knowing the Plaintiff's essential job duties don't require any of the above-mentioned tasks. Accommodations #2 - #6 are the job duties of a Corrections Officer. More importantly, GEO Group acknowledged this in a letter to Dr. Poitier on April 27, 2018. Accommodations #2 - #6 offered no assistance in allowing the Plaintiff to do the essential functions of her job. In addition, accommodations #2 - #6 were never requested by the Plaintiff.

62. Approved accommodation #7 is not an accommodation if the Plaintiff is locked in a quad for nearly half of her workday, preventing the Plaintiff

access to a bathroom and emergency services if needed. GEO Group acted

with malice, for GEO Group knew that they were providing no

accommodation for the Plaintiff to carry out the essential functions of her job.

63. GEO Group's working conditions chart for Substance Abuse Counselors

shows carrying, lifting, pushing, pulling, and climbing as occasional job

duties should the need arise. Plaintiff was never required to do any of the

aforementioned tasks while employed with GEO Group. Plaintiff's job was

performed at the sedentary physical demand level and included completing

paperwork at her desk, counseling clients at her desk, and conducting group

counseling in a quad.

64. Without any verbal communication from the Plaintiff, GEO Group

intentionally provided accommodations that offered no assistance to the

Plaintiff for her to carry out the essential functions of her job.  However, GEO

Group denied the two accommodations that would allow the Plaintiff to carry

out the essential functions of her job.

65. All Substance Abuse Counselors have Peer Facilitators that help them with

their work and the facilitation of their group counseling sessions. If Plaintiff

had to do any carrying, lifting, pushing, or climbing, Plaintiff would ask one

of the Peer Facilitators for assistance or ask one of the other 1,900 male

inmates housed at the facility. Because Plaintiff was never required to do any

of the tasks stated in accommodations #2 - #6, she never had any reason to request them.

66. After receiving the denial letter, it was clear to the Plaintiff that GEO Group provided an altered Accommodation Request Form listing occasional and rare job duties as the essential job duties of a Substance Abuse Counselor in an attempt to justify a denial yet prevent any legal ramifications. In fact, GEO Group provided Littler Mendelson (Representative for GEO Group) with the denial form as evidence in their Positioning Statement with EEOC in which Littler Mendelson argued the following on GEO Group's behalf:

> "ADAAA does not entitle Charging Party to her preferred accommodation of choice – only to an effective reasonable accommodation."

However, the approved accommodations provided by GEO Group were neither effective nor reasonable.

67. GEO Group also provided the Plaintiff with an altered Accommodation Request Form listing occasional and rare job duties as essential job duties, so GEO Group can legally argue that the Plaintiff does not meet the term "Qualified Individual" as identified in 42 U.S.C. § 12111(8). 42 U.S.C. § 12203 (b) because she was unable to perform all essential functions of the job. Although GEO Group does have considerable judgment as to what job

duties are essential, the ADA states that the Defendant's advertisement of the position shall be considered as evidence for the essential functions of the job. 42 U.S.C. § 12111(8). GEO Group's job advertisement for Substance Abuse Counselors does not list any of the occasional or rare job duties which were documented in the Accommodation Request Form.

68. Because Dr. Poitier checked the box on GEO Group's Accommodation Request Form that the Plaintiff cannot do any of the occasional or rare job duties like carrying, lifting, pushing, or climbing, GEO Group decided that they would grant those accommodations without any verbal input from the Plaintiff.

69. No one from GEO Group has attempted to speak with the Plaintiff about her disability. When the Plaintiff ask Ms. Ruffin about placing her counseling sessions somewhere else, Ms. Ruffin replied in writing via email on May 10, 2018, "The approved accommodations are listed on your letter. The denied accommodations are listed, as well."

70. GEO Group's Company Policy is that facility human resource managers are required to forward all ADA Accommodation Requests Forms to its corresponding regional office for review and approval. Ms. Ruffin acknowledged this in an email that she sent to the Plaintiff on April 27, 2018. However, Plaintiff's Reasonable Accommodation Request Form never made

it to GEO Group's Regional Office for review and approval. GEO Group violated its own policy to ensure the Plaintiff does not receive a reasonable accommodation.

71. Although the Plaintiff instructed GEO Group numerous times that the two accommodations were medically necessary, GEO Group continued to demand that the Plaintiff work in the quad, and failure to do so violates GEO Group's Policy. GEO Group intentionally ignored the request of two medical doctors, its own insurance provider (Mutual of Omaha), and the Plaintiff.

72. GEO Group knew the Plaintiff was suffering from severe Anemia, a fibroid tumor, and depression because Dr. Poitier documented it on both of GEO Group's Accommodation Request Forms, yet GEO Group refused to grant the Plaintiff a reasonable accommodation.

73. On May 10, 2018, Plaintiff instructed GEO Group via email that since the accommodations were not granted, she will have to return back to work after having surgery. ADA allows the Plaintiff to reject unreasonable accommodations or accommodations that will not allow her to carry out the essential functions of her job pursuant to 29 CFR § 1630.9(d). In addition, Plaintiff's decision to not work in the quad and remain home was not an arbitrary decision. It was based on the following:

- The Plaintiff had previous incidents of hemorrhaging from her vaginal area, and she did not feel comfortable with possibility of more than 70 male inmates witnessing blood come out of her vaginal area onto her clothes and to the floor.

- Because the fibroid was affecting the Plaintiff's bladder (which is visible on an MRI performed by the University of Miami), she was unable to hold her urine. The Plaintiff did not feel comfortable with the possibility of urinating on herself in front of more the 70 male inmates.

- The relationship between staff and inmates is strained; in that, many inmates consider staff as an enemy. At times, Plaintiff would suffer from severe anemia that would cause weakness, anxiety, and heart problems. Plaintiff feared her medical condition may prevent her from defending herself or getting help should an emergency arise.

74. While GEO Group was declining all of the Plaintiff's accommodation requests, GEO Group was accommodating a Caucasian Substance Abuse Counselor, Susan Levy, from what Ms. Levy told the Plaintiff, secondhand smoke. Ms. Levy conducted her group counseling sessions in the morning while the Plaintiff conducted hers in the afternoon. Although the same classroom that Ms. Levy used in the morning was available in the afternoon,

GEO Group prohibited the Plaintiff from using the classroom. 42 U.S.C. § 2000e-2(a), 42 U.S.C. § 1981(a).

75. Throughout the Plaintiff's entire employment with GEO Group, GEO Group had accommodated Ms. Levy by allowing her to conduct her group counseling sessions in a classroom rather than a quad. However, when Plaintiff asked for a temporary accommodation, Plaintiff was harassed, discriminated against, and subjected to an adverse employment action. 42 U.S.C. § 2000e-2(a).

76. GEO Group had several options for accommodating the Plaintiff, as cited below: 42 U.S.C. § 12111(9).

- GEO Group could have allowed the Plaintiff to use the same classroom in the afternoon that they allowed Ms. Levy to use in the morning.

- GEO Group could have temporarily relocated the Plaintiff's group counseling sessions to one of the educational classrooms and have one of the teachers conduct his/her classes in the quad.

- GEO Group could have rescheduled the Plaintiff's group counseling sessions after hours when all the educational classrooms are empty.

- GEO Group could have relocated the Plaintiff's counseling sessions to the activity room in the Administrative Building, which is infrequently used.

- GEO Group could have temporarily placed the Plaintiff in one of the vacant positions that they had available, all of which the Plaintiff is overqualified to do and all of which are outside of a locked quad. In addition, some of the below positions were still vacant when GEO Group terminated the Plaintiff's employment.

  o Education clerk

  o Data Entry Clerk

  o Medical Records Clerk

  o Case Manager

  o HR Specialist

  o Inmate Property Clerk

  o Payroll Clerk

77. GEO Group knew the Plaintiff was hemorrhaging from her vaginal area, yet GEO Group repeatedly demanded the Plaintiff work in a locked quad to humiliate her in front of coworkers and more than 70 male inmates. GEO Group knew the Plaintiff was suffering from urinary incontinence as a result of a fibroid tumor, yet GEO Group repeatedly demanded the Plaintiff work in a locked quad to embarrass, humiliate, and degrade her in front of her coworkers and more than 70 male inmates.

78. GEO Group knew the Plaintiff was suffering from a life-threatening disability, yet GEO Group repeatedly demanded the Plaintiff work in a quad (whether acting intentionally or recklessly) to possibly bring about serious bodily harm or death to the Plaintiff. GEO Group knew the Plaintiff was suffering from depression due to the severe anemia, yet GEO Group intentionally harassed, discriminated, and created a hostile work environment for the Plaintiff.

79. After Defendant refused to accommodate the Plaintiff, the Plaintiff's health rapidly declined primarily due to stress brought on by the Defendant. The unlawful discriminatory behavior by GEO Group impacted the Plaintiff's health so badly that resuscitation measures were implemented at Wellington Regional Hospital. By July of 2018, Plaintiff could no longer walk and needed the assistance of hospital staff to assist with daily living functions.

80. What's even worst, GEO Group abruptly terminated the Plaintiff's health insurance (in the middle of the month) without warning or notice to prohibit the Plaintiff from receiving medical services. A simple 30-day notice would have allowed the Plaintiff to continue medical services without an interruption. As a result, the Plaintiff was left uninsured after a high-risk surgery.

81. Because of the rapid decline of Defendant's health, emergency surgery efforts were conducted between the University of Miami and Wellington Regional Hospital because the Plaintiff was too weak for transport to the University of Miami for her scheduled surgery. As the Plaintiff's condition deteriorated, emergency room doctors at Wellington Regional Hospital administered resuscitation measures to stabilize the Plaintiff until an Interventional Radiologist trained by the University of Miami could conduct emergency surgery at Wellington Regional Hospital. If GEO Group had terminated the Plaintiff's health insurance earlier, the results may have been fatal.

82. GEO Group knew that the Plaintiff was ill and needed surgery, yet GEO Group cut off the Plaintiff's health insurance without warning or notice in the middle of the month. Although GEO Group does not have to provide health insurance for the Plaintiff, she was certainly entitled to be informed that her health insurance was to be terminated, so other arrangements could have been made.

83. Even worst, when the Plaintiff contacted GEO Group twice asking them to reinstate her health insurance because she just had surgery, GEO Group refused to respond. GEO Group could have reinstated her health insurance at least until the end of the month, and it would not have cost them a penny more.

84. GEO Group terminated the Plaintiff's employment on August 13, 2018 although she had informed them (via email on May 10, 2018) that she would be returning back to work after surgery. GEO Group never informed the Plaintiff that she was going to be terminated or that she was terminated. The Plaintiff later discovered via a Cobra notice that she had been terminated from her job.

85. As of the date of this filing, GEO Group has supported and defended the discriminatory actions cited in this complaint. Although Warden Claude Maye has retired, GEO Group still employs Human Resources Manager Lakeshia Ruffin and Assistant Warden Charles Lawrence. However, shortly after receiving the Plaintiff's EEOC complaint, GEO Group moved Human Resources Manager Lakeshia to the State of Georgia where she continues to work for GEO Group as the Human Resources Manager at the Robert A Detention Facility in Lovejoy, Ga.

86. GEO Group has deceived the Equal Employment Opportunity Commission (EEOC) with misleading and false information that resulted in the dismissal of Plaintiff's charges with EEOC. GEO Group falsely lead EEOC to believe that they had provided seven reasonable accommodations to the Plaintiff, when in fact they had provided none. Jeanette P. Wooten, the EEOC investigator assigned to Plaintiff's case, stated that because GEO Group

provided documentation supporting seven reasonable accommodations, EEOC has to dismiss the case.

## COUNT I

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT

## DISABILITY DISCRIMINATION

87. Title I of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of a disability in regards to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112 (a).

88. Prior to and at the time that Defendant terminated Plaintiff's employment, Plaintiff was qualified for employment with Defendant as a Substance Abuse Counselor, and she had the required education, professional experience, skills, and other job-related requirements for the position. Plaintiff could have also performed the essential functions of the position with Defendant, with or without a reasonable accommodation.

89. As alleged in the preceding paragraphs 1 through 86 of this complaint as fully set forth herein, Defendant, by and through its employees, managers, and agents, discriminated against Plaintiff and altered the terms, conditions, and

privileges of Plaintiff's employment by harassing, threatening, and creating a hostile and unsafe work environment without just cause or justification.

90. A total of five reasonable accommodation requests were submitted to GEO Group by two medical doctors that instructed GEO Group that Plaintiff cannot work in a locked quad due to her medical condition. Although GEO Group knew the Plaintiff had a life-threatening disability, GEO Group acted with malice and denied the Plaintiff's reasonable accommodation requests and offered no reasonable accommodation that would allow the Plaintiff to perform the essential functions of her job. 42 U.S.C. § 12112(a)-(b).

91. GEO Group acted with malice when they provided the Plaintiff an altered accommodation request form listing occasional and rare job duties as essential job duties. Without any verbal communication from the Plaintiff, GEO Group offered the occasional and rare job duties as accommodations.

92. Although GEO Group knew the Plaintiff was hemorrhaging from her vaginal area and suffering from urinary incontinence as a result of a fibroid tumor, GEO Group repeatedly demanded that the Plaintiff work in a locked quad for nearly half of her workday with over 70 male inmates and no immediate means of communicating with staff should an emergency arise.

93. The Plaintiff was called into a meeting with her supervisor, Levenia Alexis, and instructed the Plaintiff that per Assistant Warden Charles Lawrence,

Plaintiff will not be accommodated, and Plaintiff must work in the quad, regardless of her medical condition.

94. The Plaintiff was also denied the use of accrued PTO because according to GEO Group, the Plaintiff disrupted the department flow by getting sick and requiring hospitalization.

95. Defendant took adverse action against Plaintiff and terminated Plaintiff's employment primarily due to Plaintiff's disabilities in violation of ADA, 42 U.S.C. § 12112(a).

96. Defendant did not have a legitimate, nondiscriminatory reason for its decision to terminate Plaintiff's employment.

97. Plaintiff has suffered, continues to suffer, and will continue to suffer harm as a direct result of Defendant's discrimination.

98. As a direct, proximate, and foreseeable result of Defendant's actions, inactions, in violation of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following:

    A. Lost wages or benefits, past and future

    B. Lost earning capacity

    C. Medical and related expenses

    D. Noneconomic damages, including but not limited to:

        i.   Pain and suffering

ii.   Mental anguish

iii.   Anxiety and panic attacks

iv.   Posttraumatic stress disorder

v.   Loss of dignity

vi.   Loss of capacity for the enjoyment of life

vii.   Irreparable damages to her family and relationships

viii.   Other non-pecuniary losses and intangible injuries

E. Other economic losses proximately caused and allowable under the ADA according to proof.

99.   Plaintiff is further entitled to any and all relief, including, but not limited to, equitable relief, permitted under the ADA. See 42 U.S.C. § 12117(a) (stating that the remedies and enforcement procedures available in Title VII of the Civil Rights Act of 1964 – including 42 U.S.C.  2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 – apply to actions for disability discrimination under the ADA).

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated Title I of the ADA, as amended, and its implementing regulations, by discriminating against Plaintiff on the basis of her disability.

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA.

D. Award Plaintiff any and all other damages available under the ADA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof:

   a. Award Plaintiff pre- and post-judgment interest.

  b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

  c. Grant such other and further relief as the Court deems just and proper.

## COUNT II

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT
## FAILURE TO ACCOMMODATE

100. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

101. Defendant discriminated against Plaintiff because of one or more of her disabilities by failing to provide a reasonable accommodation for her disabilities within the meaning of the ADA.

102. Under the ADA, if an employer knows that an employee has a disability and needs a reasonable accommodation to perform the essential functions of a job, the employer must provide a reasonable accommodation. 42 U.S.C. § 12112(a)-(b).

103. At all times material herein, Plaintiff had a qualifying disability.

104. Prior to Plaintiff's termination, Plaintiff was qualified for employment with Defendant as a Substance Abuse Counselor, for she had the requisite

education, professional experience, skills, and other job-related requirements

for the position, and could have performed the essential functions of the

position with Defendant, with or without reasonable accommodation.

105. As alleged herein, Defendant knew of or had notice of one or more of

Plaintiff's disabilities.

106. As more particularly described in the "STATEMENT OF FACTS" section of

this complaint, Plaintiff submitted five reasonable accommodation requests.

107. The reasonable accommodation would have allowed Plaintiff to perform the

essential functions of her position as a Substance Abuse Counselor.

108. Defendant refused and failed to provide Plaintiff with a reasonable

accommodation, or any other reasonable accommodation.

109. Defendant cannot claim that this reasonable accommodation would have

imposed an undue hardship on Defendant.

110. Defendant could have accommodated Plaintiff by allowing her to use the

same room that Ms. Leavy used in the morning for her group counseling

sessions, in the afternoon. GEO Group could have temporarily rescheduled

the Plaintiff's group counseling sessions, move one of its teachers to a quad

and move the Plaintiff into a classroom, or temporarily move the Plaintiff to

one of its vacant positions, some of which were vacant when GEO Group

terminated the Plaintiff's employment.

111. After Plaintiff informed Defendant of her disability and requested an accommodation, Defendant should have made good faith efforts to consult with the Plaintiff in order to identify and make reasonable accommodations.

112. However, Defendant failed to act in good faith and engage in any meaningful interactive process to identify and make reasonable accommodations for the Plaintiff.

113. Defendant cannot claim that the accommodations that Plaintiff requested would have imposed an undue hardship on the operation of its business as the accommodations would not have caused significant difficulty or expense on the part of the Defendant.

114. Defendant's refusal and failure to provide Plaintiff with a reasonable accommodation resulted in the termination of Plaintiff's employment.

115. Plaintiff has suffered, continues to suffer, and will continue to suffer harm as a result of Defendant's failure to provide Plaintiff with a reasonable accommodation, in violation of the ADA.

116. As a direct, proximate, and foreseeable result of Defendant's actions, inactions, in violation of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following:

    A. Lost wages or benefits, past and future

    B. Lost earning capacity

C. Medical and related expenses

D. Noneconomic damages, including but not limited to

     i.   Pain and suffering

     ii.   Mental anguish

     iii.   Anxiety and panic attacks

     iv.   Posttraumatic stress disorder

     v.   Loss of dignity

     vi.   Loss of capacity for the enjoyment of life

     vii.   Irreparable damages to her family and relationships

     viii.   Other non-pecuniary losses and intangible injuries

117. Plaintiff is further entitled to any and all relief, including but not limited to equitable relief, permitted under the ADA.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated Title I of the ADA, as amended, and its implementing regulations, by discriminating against Plaintiff on the basis of disability.

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA.

D. Award Plaintiff any and all other damages available under the ADA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof:

    a. Award Plaintiff pre- and post-judgment interest.

    b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

    c. Grant such other and further relief as the Court deems just and proper.

## COUNT III

## VIOLATION OF THE AMERICAN WITH DISABILITIES ACT

## RETALIATION

118. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs 1 through 86 of this complaint as though fully set forth herein.

119. The ADA prohibits retaliation against an individual for opposing an unlawful act or practice for making a charge under the ADA.  42 U.S.C. § 12203(a).

120. Defendant retaliated against Plaintiff because she took steps to enforce her lawful rights under the ADA. Plaintiff engaged in a statutorily protected expression or activity when she requested reasonable accommodations under the ADA from the Defendant as alleged herein.

121. As alleged herein, Plaintiff suffered an adverse employment action as a direct result of her request for a reasonable accommodation and engagement in this protected expression or activity.

122. Specifically, as a direct and proximate result of Plaintiff's request for a reasonable accommodation and engagement in this protected expression or activity under the ADA, Defendant, through its employees, managers, and agents, ultimately terminated her employment.

123. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered, continues to suffer, and will suffer past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

124. As a direct, proximate, and foreseeable result of Defendant's actions, inactions, in violation of the ADA, Plaintiff has suffered, continues to suffer, and will suffer the following:

    A. Lost wages or benefits, past and future

    B. Lost earning capacity

    C. Medical and related expenses

    D. Noneconomic damages, including but not limited to:

        i.   Pain and suffering

        ii.   Mental anguish

        iii.   Anxiety and panic attacks

        iv.   Posttraumatic stress disorder

        v.   Loss of dignity

        vi.   Loss of capacity for the enjoyment of life

        vii.   Irreparable damages to her family and relationships

        viii.   Other non-pecuniary losses and intangible injuries

125. Plaintiff is further entitled to any and all relief, including but not limited to equitable relief, permitted under the ADA.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated Title I of the ADA, as amended, and its implementing regulations, by discriminating against Plaintiff on the basis of her disability.

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the Defendant's discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will fully, justly, and reasonably compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to the ADA.

D. Award Plaintiff any and all other damages available under the ADA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the ADA, according to proof:

    a. Award Plaintiff pre- and post-judgment interest.

    b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

    c. Grant such other and further relief as the Court deems just and proper.

## COUNT IV

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

## DISABILITY DISCRIMINATION

126. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding paragraphs 1 through 86 of this complaint as though fully set forth herein.

127. The FCRA provides that it is unlawful employment practice for an employer to discriminate against an individual on the basis of, *inter alia*, an individual's "handicap." Fla. Stat. § 760.10(1)(a).

128. Plaintiff was a member of a protected class under the FCRA by way of her handicaps (disabilities).

129.   As such, Defendant is an "employer" within the meaning of Fla. Stat. §
       760.02(7), Florida statutes, and thus is liable under the FCRA for the
       disability discrimination suffered by Plaintiff as alleged herein.

130.   As applied to discrimination based on a handicap (disability), the FCRA is
       construed in conformity with the ADA, 42 U.S.C. § 12101 *et. seq.*

131.   Prior to Defendant terminating Plaintiff's employment, Plaintiff was
       qualified for employment with Defendant as a Substance Abuse Counselor,
       for she had the requisite education, professional experience, skills, and other
       job-related requirements for the position. Plaintiff could have performed the
       essential functions of the position with Defendant, with or without a
       reasonable accommodation.

132.   Defendant knew of Plaintiff's handicaps (disabilities).

133.   By the Defendant's conduct, more particularly described in the
       "STATEMENT OF FACTS" section of this complaint, Defendant engaged
       in unlawful employment practices and discriminated against Plaintiff on the
       basis of her handicaps (disabilities) in violation of FCRA.

134.   By the conduct actions, more particularly described in the "STATEMENT
       OF FACTS" section of this complaint, Defendant, by and through the
       conduct of its employees, managers, and agents, took tangible adverse
       employment actions against Plaintiff.

135. Plaintiff suffered an adverse employment action when Defendant, among other things, terminated Plaintiff's employment.

136. The discrimination to which Plaintiff was subject to was primarily based on her handicaps (disabilities).

137. Defendant did not have a legitimate, nondiscriminatory reason for terminating Plaintiff's employment.

138. The discriminatory conduct of Defendant, and its employees, managers, and agents, against Plaintiff on the basis of handicap (disability), has caused, continues to cause, and will cause Plaintiff to suffer substantial damages.

139. As a direct, proximate, and foreseeable result of Defendant's actions, inactions, in violation of the FCRA, Plaintiff has suffered, continues to suffer, and will suffer the following:

A. Lost wages or benefits, past and future

B. Lost earning capacity

C. Medical and related expenses

D. Noneconomic damages, including but not limited to:

    i.    Pain and suffering

    ii.    Mental anguish

    iii.    Anxiety and panic attacks

    iv.    Posttraumatic stress disorder

    v.    Loss of dignity

    vi.    Loss of capacity for the enjoyment of life

    vii.    Irreparable damages to her family and relationships

    viii.    Other non-pecuniary losses and intangible injuries

140. Plaintiff is entitled to recover attorney fees and litigation expenses pursuant to the FCRA.

141. Plaintiff has no plain, adequate, or complete remedy at law for the actions of the Defendant, which has caused, and continue to cause, her harm.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grants the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated the FCRA by discriminating against Plaintiff on the basis of her handicap (disability).

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, pension, and any other appropriate

nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to and within the statutory limitations of the FCRA.

D. Award Plaintiff any and all other damages available under the FCRA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof:

   a. Award Plaintiff pre- and post-judgment interest.

   b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

   c. Grant such other and further relief as the Court deems just and proper.

## COUNT V

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

## FAILURE TO ACCOMMODATE

142. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

143. At all times material herein, Plaintiff was an individual with "handicaps" (disabilities) with the meaning of the FCRA and ADA.

144. Prior to the Defendant terminating Plaintiff's employment, Plaintiff was qualified for employment with Defendant as a Substance Abuse Counselor, and she had the requisite education, professional experience, skills, and other job-related requirements for the position. Plaintiff could have performed the essential functions of the position with Defendant, with or without a reasonable accommodation.

145. As alleged herein, Defendant knew of and had notice of Plaintiff's handicaps (disabilities).

146. As alleged herein, Plaintiff submitted requests to Defendant for reasonable accommodations due to a fibroid tumor and severe anemia.

147. The reasonable accommodation would have allowed Plaintiff to perform the essential functions of her position as a Substance Abuse Counselor.

148. Defendant refused and failed to provide Plaintiff with a reasonable accommodation.

149. Defendant cannot claim that this reasonable accommodation would have imposed an undue hardship on Defendant.

150. Defendant refused and failed to accommodate Plaintiff's requests for a reasonable accommodation and begin discriminating and harassing Plaintiff without cause or justification. Defendant had Plaintiff complete multiple accommodation request forms with no intent on providing an accommodation.

151. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated the FCRA by discriminating against Plaintiff on the basis of her handicap (disability).

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination

against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, pension, and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to and within the statutory limitations of the FCRA.

D. Award Plaintiff any and all other damages available under the FCRA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof:

    a. Award Plaintiff pre- and post-judgment interest.

    b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

    c. Grant such other and further relief as the Court deems just and proper.

## COUNT VI

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

## RETALIATION

152. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

153. At all times material herein, Plaintiff was an individual with "handicaps" (disabilities) within the meaning of the FCRA and ADA.

154. At all times material herein, Plaintiff suffered from qualifying handicaps (disabilities).

155. Prior to Defendant terminating Plaintiff's employment, Plaintiff was qualified for employment with Defendant as a Substance Abuse Counselor, and she had the requisite education, professional experience, skills, and other job-related requirements for the position.

156. As alleged herein, Defendant knew of and had notice of Plaintiff's handicaps (disabilities).

157. Defendant refused and failed to provide Plaintiff with a reasonable accommodation.

158. Defendant cannot claim that this reasonable accommodation would have imposed an undue hardship on Defendant.

159. Defendant refused and failed to accommodate Plaintiff's request for a reasonable accommodation and begin discriminating and harassing Plaintiff without cause or justification, ultimately leading to an adverse employment action.

160. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation, and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated the FCRA by discriminating against Plaintiff on the basis of her handicap (disability).

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, pension, and any other appropriate

nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to and within the statutory limitations of the FCRA.

D. Award Plaintiff any and all other damages available under the FCRA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof:

    a. Award Plaintiff pre- and post-judgment interest.

    b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

    c. Grant such other and further relief as the Court deems just and proper.

## COUNT VII

## VIOLATION OF SECTION 1981 OF THE CIVIL RIGHTS ACT OF 1866

## RACE, COLOR, AND ETHNICITY

161. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

162. Section 1981 of the Civil Rights Act of 1866 has been interpreted by the United States Supreme Court to protect "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis College v. Al-Khazraji, 481 US 604, 613 (1987).

163. In order for a Plaintiff to prevail on a claim under section 1981, he or she "must initially plead and ultimately prove that, but for race, [he or she] would not have suffered the loss of a legally protected right." Comcast Corp. v. Natl. Assn. of African Am.-Owned Media, 18-1171, 2020 WL 1325816, at *7 (U.S. Mar. 23, 2020).

164. Generally, Courts apply the same standards of proof for claims under Section 1981 as applies to title VII claims. Ocasio v. Lehigh Valley Fam. Health Ctr., 92 Fed. Appx. 876, 879 (3rd Cir. 2004) (unpublished); Manatt v. Bank of Am., NA 339 F. 3d 792, 797 (9th Cir. 2003).

165. Thus, in order to establish a prima facie case "for employment discrimination due to a hostile work environment under 42 U.S.C. § 1981, a Plaintiff must show: (1) that he or she suffered intentional discrimination because of race;

54

(2) that discrimination was severe or pervasive; (3) the discrimination detrimentally affected the Plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of respondent superior liability."

166. Plaintiff is an African American female and is protected from discrimination based on race, color, and ethnicity pursuant to 42 U.S.C. § 19819(a).

167. Plaintiff was subjected to "intentional discrimination because of her race" as she was treated with less respect, as her Caucasian counterpart.

168. Plaintiff further suffered disparate treatment as she was denied a reasonable accommodation request for a life-threatening disability while GEO group accommodated a Caucasian counterpart for secondhand smoke.

169. Within the entire time Plaintiff was employed for GEO group (2 years and 8 months), GEO group accommodated Substance Abuse Counselor Susan Levy, a Caucasian female, and allowed her to conduct her group counseling sessions in a classroom rather than a quad.

170. When Plaintiff requested a temporary reasonable accommodation, Plaintiff was subjected to severe harassment, discriminatory behavior, and terminated from her employment.

171. GEO Group had the Plaintiff complete multiple accommodation request forms with no intent on providing a reasonable accommodation to the

Plaintiff. GEO Group also had the Plaintiff complete an ADA request form that was altered/modified to disadvantageously work against the Plaintiff.

172. Although GEO Group knew the Plaintiff was hemorrhaging from her vaginal area and suffering from urinary incontinence as a result of a fibroid tumor, GEO Group demanded that the Plaintiff work in a locked quad for nearly half of her workday while simultaneously providing an accommodation to Ms. Levy.

173. GEO Group acted with malice by allowing accommodations for occasional and rare job duties that offered no assistance to the Plaintiff in completing the essential functions of her job. However, denied the two accommodations that would allow the Plaintiff to complete the essential functions of her job.

174. GEO Group acted with malice to intentionally bring about embarrassment, harm, injury, or death to the Plaintiff by ordering her to work in a locked quad knowing the severity of her medical condition.

175. GEO Group ignored the request of two medical doctors instructing GEO Group that Plaintiff cannot work in a locked quad. However, the Defendant repeatedly ordered the Plaintiff (verbally and in writing) to work in a locked quad, and failure to do so, would violate GEO Group's policy.

176. GEO Group also acted with malice when GEO Group abruptly terminated the Plaintiff's health insurance in the middle of the month without notice or

warning, knowing the Plaintiff had a life-threatening disability that required surgery.

177. GEO Group's reasoning for failing to accommodate the Plaintiff is racist in nature by synonymously equating the Plaintiff to the quad rather than acknowledging her as an individual that can be accommodated outside of the quad.

178. The discrimination and harassment detrimentally affected the Plaintiff, for her medical condition rapidly declined resulting in resuscitation measures to preserve the Plaintiff's life.

179. The discrimination Plaintiff endured would have detrimentally affected a reasonable person of the same race and position with the same medical condition.

180. The existence of respondent superior liability is present, for the Defendant was the Plaintiff's employer.

181. Based on the totality of the circumstances surrounding this case, Plaintiff has established a prima facie case of racial discrimination.

182. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, loss of dignity,

emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated Section 1981 of the Civil Rights Act of 1866 by discriminating against Plaintiff on the basis of her race.

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, pension and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to and within the statutory limitations of Section 1981 of the Civil Rights Act of 1866.

D.  Award Plaintiff any and all other damages available under Section 1981 of the Civil Rights Act of 1866, including but not limited to damages set forth above and other economic losses proximately caused and allowable under Section 1981 of the Civil Rights Act of 1866, according to proof:

    a.  Award Plaintiff pre- and post-judgment interest.

    b.  Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

    c.  Grant such other and further relief as the Court deems just and proper.

## COUNT VIII

## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

## RACE AND COLOR

183.  Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

184.  Plaintiff is an African American female and is protected from discrimination based on race, color, and ethnicity pursuant to 42 U.S.C. § 19819(a).

185.  Fla. Stat. § 760.10 prohibits employers from discharging and discriminating against an individual with respect to their race, color, religion, sex, pregnancy, national origin, handicap, or marital status.

186. Plaintiff has met the standards of discrimination.

187. Plaintiff has established a prima facie case for employment discrimination based on race and color in paragraphs 1-86 and 162-183.

188. As a direct, proximate, and foreseeable result of Defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment in life, loss of dignity, emotional distress, humiliation and other non-pecuniary losses and intangible injuries.

WHEREFORE, Plaintiff, VARONDRIA T. WILLIAMS, demands judgment against Defendant, GEO Group Inc., and in favor of Plaintiff, and respectfully requests that this Court grant the following relief:

A. Grant judgment in favor of Plaintiff and declare the Defendant has violated FCRA by discriminating against Plaintiff on the basis of her race.

B. Award sufficient remedial relief to make Plaintiff whole for the individual loss that she has suffered as a result of the discrimination against her, including but not limited to back pay with interest, front pay in lieu of reinstatement, pension and any other appropriate nondiscriminatory measures to overcome the effects of the discrimination she has endured.

C. Award compensatory damages to Plaintiff in an amount that will properly, adequately, and completely compensate Plaintiff for the nature, extent, and duration of her injuries and damages caused by Defendant's discriminatory conduct and actions pursuant to and within the statutory limitations of the FCRA.

D. Award Plaintiff any and all other damages available under the FCRA, including but not limited to damages set forth above and other economic losses proximately caused and allowable under the FCRA, according to proof:

   a. Award Plaintiff pre- and post-judgment interest.

   b. Award Plaintiff her attorneys' fees, litigation expenses, and costs of this action, and

   c. Grant such other and further relief as the Court deems just and proper.

## COUNT IX

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

189. Plaintiff alleges, realleges, and incorporates by reference all allegations set forth in each of the preceding Paragraphs 1 through 86 of this complaint as though fully set forth herein.

190. This is an action against GEO group for the Intentional Infliction of Emotional Distress.

191. GEO group had a duty to protect its employees from any form of discrimination, harassment, retaliation, and harm.

192. GEO group's Warden (Claude Maye), Assistant Warden (Charles Lawrence), Lakeshia Ruffin (Human Resources Manager), and GEO Group's Corporate Office worked to intentionally and deliberately inflict mental and emotional stress on Williams by and through but not limited to the following acts and omissions:

    I.    By discriminating against Williams on the basis of her disability and race.

    II.    By harassing and retaliating against Williams because of her opposition to unlawful employment practices.

    III.    By treating her in a discriminatory manner different from that of her coworkers and in a less favorable manner than her coworkers.

    IV.    By creating a hostile work environment which affected the terms, conditions, and privileges of Williams employment.

    V.    By refusing to provide a reasonable accommodation and creating an accommodation request form to disadvantageously work against her.

VI.    By acting with malice and providing accommodations that GEO Group knew were of no value to the Plaintiff.

VII.    By demanding the Plaintiff work in a locked quad after receiving five requests from two medical doctors that she cannot work in a locked quad.

VIII.    By demanding the Plaintiff work in a locked quad with over 70 male inmates knowing the Plaintiff was hemorrhaging from her vaginal area and suffering from urinary incontinence.

IX.    By ordering the Plaintiff to work in an environment that GEO Group knew could bring about embarrassment, humiliation, serious bodily injury, or death.

X.    By abruptly terminating the Plaintiff's health insurance in the middle of the month without warning or notice to prevent the Plaintiff from receiving medical care.

XI.    By creating a hostile work environment knowing the Plaintiff was suffering from depression as a result of her illness.

XII.    By unlawfully creating a situation in which to disqualify the Plaintiff as a "Qualified Individual" under the ADA.

XIII.    By using existing federal laws to execute and justify discriminatory behavior against the Plaintiff.

XIV.   By knowingly providing false and misleading information to EEOC.

XV.   By allowing their agents to act in a manner that intentionally and or recklessly inflict severe emotional distress and physical injury to Williams.

XVI.   As a direct and proximate result of GEO group employees' actions, Williams has suffered severe emotional distress that caused her health to rapidly decline, nearly resulting in her death.

193.   Based on the totality of the circumstances surrounding this case, GEO Group's actions meets the Courts requirements to prove Intentional Infliction of Emotional Distress as outline below:

   a.   GEO Group engaged in extreme and outrageous conduct. "Extreme and outrageous" conduct is behavior, which, under the circumstances, goes beyond all possible bounds of decency and is regarded as shocking, atrocious, and utterly intolerable in a civilized community.

   b.   GEO Group acted with the intent to cause severe emotional distress or with reckless disregard of the high probability of causing severe emotional distress. Emotional distress is "severe" when it is of such intensity or duration that no ordinary person should be expected to endure it.; and,

     c. GEO Group's extreme and outrageous conduct is a legal cause of severe emotional distress to the Plaintiff.

194. Williams has not plain adequate, or complete remedy by law. She is suffering and will continue to suffer a repairable injury in the form of psychiatric and psychological harm, extreme emotional distress, emotional pain, mental anguish, depression, general physical illness, humiliation, loss of dignity, loss of enjoyment of life, past and future medical expenses, and punishment of her career and reputation. These losses are continuing and will continue in the future.

195. GEO group wantonly and intentionally subjected Williams to the torment referenced herein.

    Wherefore, Plaintiff respectfully requests that this Court:

     a. Award Plaintiff judgment against GEO group for compensatory damages as determined by the trier of fact.

     b. Award Plaintiff restitution damages for the benefits she would have received absent the discriminatory treatment.

     c. Enter judgment for punitive damages against GEO group; and

    d.  Award all attorney fees and costs incurred in connection with

this action; and any other and further relief as justice may

require.


## **JURY TRIAL DEMANDED**

Plaintiff requests a jury trial on all questions of fact raised by this complaint.


Respectfully submitted,

Varondria T. Williams
15096 63rd PL N.
Loxahatchee, FL 33470
Tel: 305-962-8103

Email: vt18472@gmail.com